A11A1200. AMERICAN DEBT FOUNDATION, INC. v. HODZIC.
(720 SE2d 283)

DILLARD, Judge.

American Debt Foundation, Inc. ("ADF") appeals the trial court's certification of a class of nine Georgia residents who contracted with the company for debt-relief services, arguing that the citizens—with Mirsada Hodzic as the class representative—failed to establish two necessary requirements to support class certification: numerosity and superiority. For the reasons noted infra, we reverse the trial court's certification of the class.

ADF is a Florida-based debt-negotiation company that contracts with individuals to assist them in reducing their unsecured debt by negotiating the settlement of their accounts with creditors. Although the company no longer operates in Georgia or offers its services to our residents,[1] it did so as of July 1, 2003, and Hodzic was one of nine Georgians who contracted with ADF to negotiate the settlement of her debts with creditors.

ADF's standard formula, which indisputably applied to all Georgia clients, is to charge customers 14 percent of their total debt with approximately 10 percent of the customer's estimated settlement amount paid upon acceptance into the program. And after

---

[1] According to the company's owner and president, ADF keeps a list of states in which the company does not take on clients due to regulations in those states. Georgia was added to the list after the company became aware of state regulations that it deemed to be adverse to its business model and operating procedures.

generally accruing six or seven months of monthly payments into a customer's account, ADF then begins to settle the client's debt with his or her creditors.

As to Hodzic, upon her enrollment in November 2005, ADF sent letters to her creditors to inform them of same, but no settlement payments were ever made from Hodzic's account with the company to her creditors, despite a down payment to enroll and nine monthly payments.

Hodzic eventually terminated her account with ADF after her debts went into default and she learned that the payments she had made to ADF were never forwarded to any of her creditors. ADF thereafter refunded Hodzic with a portion of the payments she had made to the company; however, Hodzic filed suit against the company, alleging violations of OCGA § 18-5-2, which, as amended in July 2003, provides that

> [i]n the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor; provided, however, no provision of this chapter shall prohibit any person, in the course of engaging in debt adjusting, from imposing upon a debtor who resides in this state a reasonable and separate charge or fee for insufficient funds transactions.[2]

Hodzic eventually sought class certification to represent the interests of all Georgia citizens who contracted with ADF for debt-reduction services,[3] and the trial court granted same. This appeal by ADF follows.[4]

---

[2] OCGA § 18-5-2. The Code further provides that
[a]ny person who engages in debt adjusting in violation of the provisions of Code Section 18-5-2 . . . shall . . . be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for violation of the provisions of this chapter.
OCGA § 18-5-4 (b) (2).

[3] The class was specifically defined as "[a]ll Georgia residents from whom ADF accepted fees and contributions on or after July 1, 2003 in an amount in excess of 7.5 percent of the amount paid monthly by the individual Class Plaintiffs to ADF for distribution to Plaintiff's individual creditors in violation of the Georgia Debt Adjusting Act."

[4] We note that this case was previously before this Court when we dismissed ADF's direct appeal of the trial court's order that "merely granted a motion [to] set aside a class certification order for the purpose of permitting discovery," which was not a directly

At the outset, we note that in reviewing the trial court's order granting class certification, "we will consider the factual findings as adopted by the trial court and affirm them unless clearly erroneous, and we will review the conclusions of law for an abuse of discretion."[5] Additionally, "it is appropriate that we look to federal cases interpreting Rule 23 of the Federal Rules of Civil Procedure, the rule upon which OCGA § 9-11-23 was based, for guidance" due to the current dearth of Georgia cases addressing same.[6]

In order to gain class certification, a plaintiff has the burden of establishing that the prerequisites of OCGA § 9-11-23 (a) have been satisfied, those being (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.[7] Additionally, the class must satisfy at least one ground under OCGA § 9-11-23 (b), which provides, in relevant part, that a case may proceed as a class action if

> the prerequisites of OCGA § 9-11-23 (a) are satisfied and[ ] (1) the prosecution of separate actions would create a risk of inconsistent adjudications or would impair other parties' ability to protect their interests; (2) the defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the whole class; or (3) questions of law or fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[8]

On appeal, ADF challenges whether Hodzic has satisfied the numerosity requirement and, alternatively, whether the use of a class action suit is the superior method of resolving the case as set forth in OCGA § 9-11-23 (b) (3).

1. ADF first argues that Hodzic has failed to satisfy the numerosity requirement with a class of nine Georgia citizens. We agree.

---

appealable judgment. Following our dismissal, the trial court reentered an earlier order that certified the class, which is the order ADF now appeals.

[5] *Brenntag Mid S., Inc. v. Smart*, 308 Ga. App. 899, 903 (2) (710 SE2d 569) (2011).

[6] *Id.* (citation and punctuation omitted); *see also EarthLink, Inc. v. Eaves*, 293 Ga. App. 75, 76 (1) n.1 (666 SE2d 420) (2008) ("[B]ecause OCGA § 9-11-23 is similar to Federal Rule of Civil Procedure 23, Georgia courts look to federal authority when construing our statute." (citation omitted)).

[7] *See* OCGA § 9-11-23 (a); *see also EarthLink, Inc.*, 293 Ga. App. at 76 (1) ("Under Georgia law, a case may proceed as a class action if all prerequisites of OCGA § 9-11-23 (a) are satisfied: numerosity, commonality, typicality, and adequacy . . . .").

[8] *EarthLink, Inc.*, 293 Ga. App. at 76 (1) (footnote omitted); *see also* OCGA § 9-11-23 (b).

Numerosity is "the threshold factor, the sine qua non for class actions."[9] Upon a finding that "the 'numerousness' of parties makes it impracticable without great delay and other inconveniences to join them all, which would obstruct and probably defeat the purposes of justice[,]" the trial court may consider whether it represents a proper case to proceed as a class action.[10]

Here, through the use of discovery, Hodzic only identified eight other Georgians who contracted with ADF for debt-reduction services. And while it is true that "numbers as small as 25 and 40 have been deemed sufficiently large to warrant class actions[,]"[11] we simply cannot say that Hodzic has shown that a class of nine total members satisfies the numerosity requirement of OCGA § 9-11-23 (a) (1).[12]

Although the focus of the numerosity requirement generally concerns "whether joinder of proposed class members is impractical" and not "whether the number of proposed class members is too few,"[13] the Eleventh Circuit has, at least in general terms, found that a class of fewer than 21 members is inadequate.[14] On the other hand, impracticability of joinder is generally presumed if the class includes more than 40 members.[15] Therefore, a class of nine members would, as a general proposition, be inadequate for class certification in the absence of other factors showing that joinder is impracticable.[16]

---

[9] *Ford Motor Credit Co. v. London*, 175 Ga. App. 33, 35-36 (332 SE2d 345) (1985).

[10] *Id.* at 36 (citation omitted).

[11] *Id.*; *see also Sta-Power Indus., Inc. v. Avant*, 134 Ga. App. 952, 955 (1) (216 SE2d 897) (1975).

[12] *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U. S. 318, 330 (III) (A) (100 SC 1698, 64 LE2d 319) (1980) (holding that although the numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations," a class of 15 was too small in Title VII action).

[13] *In re Checking Account Overdraft Litigation*, 275 FRD 666, 672 (II) (A) (i) (S.D. Fla. July 25, 2011).

[14] *See id.*; *see also Cox v. Am. Cast Iron Pipe Co.*, 784 F2d 1546, 1553 (II) (B) (1) (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." (punctuation omitted) (citing 3B Moore's Federal Practice ¶ 23.05[1] n.7 (1978))).

[15] *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (1) (M.D. Fla. Nov. 19, 2009) ("The numerosity requirement of Rule 23(a) is satisfied by the impracticability of joinder, which is generally presumed if a putative class amounts to more than forty individuals." (citations omitted)); *see also Foster v. City of Oakland*, No. C 05-03110 MHP, 2007 WL 219796, at *5 (N.D. Cal. Jan. 29, 2007) ("As a general rule, classes numbering greater than forty-one individuals satisfy the numerosity requirement." (citation omitted)).

[16] *See, e.g., Williams v. Henderson*, 129 Fed. Appx. 806, 811 (II) (4th Cir. 2005) (holding that eight-member class did not satisfy the numerosity requirement); *Harik v. Ca. Teachers Ass'n*, 326 F3d 1042, 1051-52 (V) (1) (9th Cir. 2003) (holding that seven-, nine-, and ten-member classes did not satisfy numerosity requirement); *Brown v. LTV Aerospace Corp.*, 232 NW2d 656, 666 (VI) (Mich. 1975) (holding that a six-member class was not "so numerous" as to qualify for class action status); *Kane v. Sierra Lincoln-Mercury, Inc.*, 533 P2d 464, 465-66 (Nev. 1975) (holding that nine-member class did not satisfy the numerosity requirement); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F3d 565, 570 (II) (6th Cir. 2004) ("The facts of the

In the case sub judice, as to the impracticability of joinder for the nine class members, Hodzic's sole argument before this Court is that permissive joinder would be legally impossible under OCGA § 9-11-20 (a).[17] Hodzic argued below and argues again before us on appeal that joinder is impossible because "each individual putative class members' claim arises as a result of separate transactions." The trial court agreed and thereafter granted the class certification.

Pretermitting whether the trial court properly determined that joinder of the plaintiffs here was legally impossible under OCGA § 9-11-20 (a),[18] that was not the proper query when assessing *numerosity* for the purpose of a class-action lawsuit. Rather, the question is whether the class of plaintiffs is "so numerous that joinder of all

---

case guide a court's determination that the class is sufficiently large to make joinder impractical." (citation omitted)).

[17] *See* OCGA § 9-11-20 (a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.").

[18] We are skeptical that an action could satisfy the commonality and typicality requirements of class certification (which the lower court held were satisfied in the case *sub judice*) but then fail to satisfy the similar requirements of permissive joinder. *Compare In re Tri-State Crematory Litigation*, 215 FRD 660, 690 (A) (2) (N.D. Ga. 2003) (noting that "[p]laintiffs must show the presence of questions of law or fact common to the entire class" and that to satisfy the requirements for class certification, "[a] representative plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory" (citation and punctuation omitted)), *with* OCGA § 9-11-20 (a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action."). *See Moore v. Comfed Savings Bank*, 908 F2d 834, 839 (IV) (A) (11th Cir. 1990) (holding that joinder of defendants was appropriate despite the existence of separate contracts because the subject transactions "arose out of a series of transactions or occurrences" and the claims "involved the same question of law and fact"); *Campbell v. Quixtar, Inc.*, Civil Action No. 2:08-CV-0045-RWS, 2008 WL 2477454, at *7 (I) (C) (N.D. Ga. June 16, 2008) (holding that court could not say "with certainty" that plaintiffs' claims did not arise out of the same series of transactions when each plaintiff had an identical contract with defendant). *Cf. Alexander v. Fulton County, Ga.*, 207 F3d 1303, 1323-24 (III) (C) (11th Cir. 2000) (interpreting Rule 20 (a)'s use of "transaction" as possibly comprehending "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship," which included a "systemic pattern or practice of race-based discrimination" (emphasis omitted)), *overruled on other grounds by Manders v. Lee*, 338 F3d 1304 (11th Cir. 2003); *Banks-Jackson-Commerce Hosp. & Nursing Home Auth. v. Floyd*, 300 Ga. App. 206, 208 (684 SE2d 274) (2009) (holding that joinder was inappropriate because plaintiffs' "claims [arose] out of separate medical treatment . . . that did not constitute the same transaction, occurrence, or series of transactions or occurrences" (punctuation omitted)). *See generally Thompson v. Bd. of Educ. of the Romeo Cmty. Schs.*, 71 FRD 398, 412 (II) (A) (W.D. Mich. 1976) (suggesting that "[Rule] 23(a) (1)'s requirement that the class be 'so numerous that joinder of all members is impracticable' could be seen as requiring that joinder be possible except for the impracticability caused by numerosity"), *reversed on other grounds by Thompson v. Bd. of Educ. of the Romeo Cmty. Schs.*, 702 F2d 1200 (6th Cir. 1983).

members is impracticable."[19] To make this determination, we look not only to the number of putative members but also at all other relevant factors; for example, "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."[20] Therefore, even if permissive joinder *is* impossible, this in and of itself would not warrant class certification.[21] If it did, the numerosity requirement would be turned on its head with the possibility of classes as small as two. And although our analysis does not turn on the number of class members alone, the plain language of Federal Rule 23 (a) (1) and Georgia's corresponding statute require "at least a minimal causal connection between the numerosity of the potential plaintiffs and the impracticability of their joinder."[22] Thus, even if joinder is "legally impermissible . . . for reasons unrelated to the number of potential class members[,]" this is insufficient to support a finding of numerosity.[23]

And here, the fact that the class contains only nine members strongly weighs against a finding of numerosity, such that Hodzic must argue and show the existence of other significant factors to warrant the satisfaction of this requirement.[24] This, she has not done.[25] Indeed, Hodzic was capable of identifying *all* putative class members, and there are no apparent geographic constraints given that all class members are Georgia residents.[26] To the extent that

---

[19] *Ziedman v. J. Ray McDermott & Co.*, 651 F2d 1030, 1038 (III) (5th Cir. 1981) (punctuation omitted).

[20] *Id.* (citation omitted).

[21] We note that Hodzic has cited no authority for the proposition that the legal impossibility of joinder *alone* would satisfy the "impracticability of joinder" analysis of the numerosity requirement, and this Court's own research returned no such authority. *See Barnes v. United States*, 68 Fed. Cl. 492, 495 (II) (Fed. Cl. 2005) (first holding that class satisfied numerosity requirement of Rule 23 because class contained potentially thousands of members, and further noting that joinder was legally impossible due to failure to satisfy requirements of Rule 20).

[22] *Jaynes v. United States*, 69 Fed. Cl. 450, 456 (I) (C) (Fed. Cl. 2006), *distinguishing Barnes v. United States*, 68 Fed. Cl. 492 (Fed. Cl. 2005).

[23] *Jaynes*, 69 Fed. Cl. at 456 (I) (C).

[24] *Cf. Thillens, Inc. v. Comm. Currency Exch. Ass'n of Ill., Inc.*, 97 FRD 668, 677 (B) (1) (N.D. Ill. 1983) ("Where the class is large, the numbers alone are dispositive of the impracticability of joinder. In such cases, the Court need not look to factors other than size, *e.g.*, geographic dispersion of the proposed members." (citations omitted)).

[25] Although Hodzic argued below that the putative class members might have difficulty obtaining knowledgeable counsel or recognizing the existence of a claim due to the lack of state appellate or federal opinions related to claims pursuant to OCGA § 18-5-2, she does not argue this on appeal, and she failed to cite any authority for that proposition. Nevertheless, we are unpersuaded that this argument is enough to overcome the presumption that a class of nine members would be practicable to join.

[26] *See Jaynes*, 69 Fed. Cl. at 455 (I) (C) ("[When] the class members are both geographically proximate and easily identified and located by means of defendant's records, joinder is more likely practicable even in light of a large class population.").

Hodzic maintains that the financial status of the class members weighs in favor of a class action, this alone is insufficient to overcome the small size of the proposed class in the absence of any other compelling evidence.[27] For these reasons, we find that the trial court abused its discretion in granting class certification.

2. Because we have reversed the certification of the class on Hodzic's failure to satisfy the numerosity requirement, we need not address ADF's alternative argument (i.e., that the use of a class-action suit is not the superior method to adjudicate the claim).

Accordingly, for all the foregoing reasons, we reverse the trial court's certification of the class.

*Judgment reversed. Mikell, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 22, 2011.

*Jason H. Coffman*, for appellant.
*Hurt, Stolz & Cromwell, James W. Hurt, Jr.*, for appellee.

---

[27] We note that the statutory scheme upon which the lawsuit is based allows a successful plaintiff to recover all fees, charges, contributions, and an additional $5,000.00 from the debt adjuster operating in violation of the Georgia Code. *See* OCGA § 18-5-4 (b) (2) ("Any person who engages in debt adjusting in violation of the provisions of Code Section 18-5-2 . . . shall . . . be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for. violation of the provisions of this chapter.").