**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules**

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1915. LEWIS v. KNOLOGY, INC. et al.

McMILLIAN, Judge.

In 2012, Shelia Lewis filed a putative class action against Knology, Inc. ("Knology") and its former directors in the Superior Court of Troup County for breach of fiduciary duty and failing to disclose material information regarding a merger between Knology and WideOpenWest Finance, LLC ("WOW"). But at her deposition, Lewis testified that she thought that her lawsuit was pending in Delaware, she had never heard of Georgia counsel or his firm, and she thought her claims were based on her failure to be paid for her shares, rather than information that should have been disclosed at the time of the merger. Based on these and other findings, the trial court denied Lewis's motion for class certification because she was not an adequate class representative, nor were her claims typical as required by OCGA § 9-11-23 (a).

Lewis now appeals, asserting that the trial court abused its discretion in denying class certification. For the reasons that follow, we find no error and affirm.

The trial court is vested with broad discretion to decide whether to certify a class, and absent an abuse of that discretion, we will not disturb the trial court's decision. *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 127 (3) (610 SE2d 529) (2005); *Hooters of Augusta v. Nicholson*, 245 Ga. App. 363, 367 (4) (537 SE2d 468) (2000). "Implicit in this deferential standard of review is a recognition of the fact-intensive basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation." (Citation and punctuation omitted.) *Brenntag Mid South, Inc. v. Smart*, 308 Ga. App. 899, 902 (2) (710 SE2d 569) (2011). Thus, "we will affirm the trial court's factual findings unless they are clearly erroneous. Under the clearly erroneous test, factual findings must be affirmed if supported by any evidence." (Citation and punctuation omitted.) Id.

In denying the motion for class certification, the trial court made the following findings of fact.[1] Less than one month after Knology and WOW signed a merger

---

[1] We recognize that the trial court executed the proposed findings of fact and conclusions of law submitted by Knology after the hearing on the motion for class certification, but note that the trial court did so only after asking both parties to submit proposed orders and that both parties consented to this procedure.

2

agreement, which required an affirmative vote of the majority of the shares of Knology's common stock to be approved, Equity Trading, a Knology shareholder, filed a putative class action suit in the Superior Court of Troup County, asserting that the Knology directors breached their fiduciary duties by approving the merger and failing to disclose all material facts in the preliminary proxy statement. On May 24, 2012, Knology filed with the Securities and Exchange Commission ("SEC") its "Definitive Proxy Statement," which affirmatively disclosed the filing of Equity Trading's complaint and a summary of its allegations and requested relief. The Definitive Proxy Statement and ballot were mailed to all Knology shareholders of record as of May 23, 2012.

On June 4, 2012, the law firm of Levi & Korsinsky filed in Delaware Chancery Court a second putative class action on behalf of Lewis as the sole proposed class representative, asserting substantively similar allegations to those contained in the Equity Trading complaint filed in Georgia. Shortly thereafter and before the shareholder meeting to consider and vote on the merger, Knology filed an amendment to its Definitive Proxy Statement and a Form 8-K with the SEC, supplementing its disclosures to report the filing of Lewis's Delaware complaint and the claims made therein. On June 26, 2012, a majority of the stockholders voted in favor of the merger,

3

which closed on July 17, 2012. Of the approximately 38.7 million shares outstanding, 31,291,445 shares voted, with 99.9% in favor of the merger.[2]

Lewis did not receive any proxy statement or a ballot and thus did not vote on the merger.[3] The reason for this was because Lewis had purchased 240 shares of preferred stock in 2001, and those shares were subject to mandatory conversion into 24.89 shares of common stock in 2003. Lewis, however, never pursued the paperwork required to convert her shares and was not listed as a holder of Knology common stock in the transfer agent's records after 2010.

On August 15, 2012, Lewis's Delaware lawsuit was voluntarily dismissed and refiled in the Superior Court of Troup County a few weeks later. The Equity Trading and Lewis complaints were thereafter consolidated through the filing of a consolidated class action complaint naming Knology and its former directors as defendants and asserting claims for breach of fiduciary duties and failure to disclose. In addition to seeking compensatory damages, the complaint also sought to rescind

---

[2] Of the shares that voted, only 19,059 voted against the merger.

[3] The trial court also noted that, under the applicable Delaware law, any shareholder who disagreed had the right to dissent and receive, instead of the merger price, the fair value of his or her shares as determined by the Delaware Chancery Court. However, the trial court found no evidence any shareholder, including Lewis, ever exercised such right.

the sale of Knology. Following a ruling that its principals would be required to submit to further discovery on issues relating to their adequacy to serve as a class representative, Equity Trading voluntarily dismissed its claims and withdrew from the action, leaving Lewis as the sole class representative.

At her deposition in January 2014, Lewis testified that she did not know anything about the Knology merger, any of the potential bidders, or the process by which the Knology directors negotiated the merger. Lewis also denied knowing that a lawsuit had been filed on her behalf in Georgia, nor had she heard of Georgia counsel.[4] And although one of the class claims is that the defendants failed to disclose material facts in Knology's proxy statement, it is undisputed that Lewis did not read the proxy statement. In fact, Lewis believed that the shareholders were not notified of the merger at all. And when asked what she hoped to gain from this lawsuit, Lewis responded,

> Well, I'm here because I have got nothing for the investment that I made and I'm sure that there's other people out there just like me. And I don't think it's fair that if this is going on that we didn't get notified. I mean, they put out the statement saying that people was to do it by proxy or all

---

[4] The same Georgia counsel orally argued on behalf of Lewis in this appeal.

that. I was never given the chance so I just want it to be fair to everybody.

Lewis was then asked if she would have been satisfied had she been paid for her shares, and Lewis replied,

> If I was going out as an individual and I went to Knology and converted this share over and that's what it was, I would be happy. But that did not happen. . . . No, my shares haven't been converted. Nothing's been done to those shares.

Following her deposition, Lewis's counsel contacted the former Knology transfer agent, obtained reinstatement of her 240 preferred shares and conversion of those shares to the 24.89 shares of common stock to which she was entitled. Lewis then accepted payment for her shares under the merger agreement, receiving $474 for her 24 common shares and $8.01 for her fractional share.

In September 2015, the trial court conducted a hearing on Lewis's motion for class certification; Lewis did not appear. Before concluding the hearing, the trial court explained that it would like to take time to look through Lewis's deposition testimony and to review the briefs again. Counsel for all parties agreed to submit proposed orders to the trial court. On December 3, 2015, the trial court issued an order denying class certification that included extensive findings of fact and

6

conclusions of law in ruling that Lewis does not satisfy the requirements of adequacy or typicality under OCGA § 9-11-23 (a) (3) and (4).[5] This appeal followed.

1. OCGA § 9-11-23 governs class actions and provides that a member of a class may sue as a representative party on behalf of the class as a whole only if:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

Subsection (a) (4) is colloquially referred to as the adequacy requirement, and it applies to both the named plaintiff and counsel.[6] See *Amchem Products, Inc. v.*

---

[5] The order also addresses Lewis's failure to prove predominance and superiority under OCGA § 9-11-23 (b) (3). However, because the trial court did not abuse its discretion in denying class certification on other grounds, it is not necessary to address these additional issues. See *Perez v. Atlanta Check Cashers, Inc.*, 302 Ga. App. 864, 867-68 (692 SE2d 670) (2010) (trial court may deny class certification where even one statutory requirement is not met).

[6] The trial court did not question the ability of plaintiff's counsel.

7

*Windsor*, 521 U.S. 591, 626 n.20 (117 SCt 2231, 138 LE2d 689) (1997). Moreover, as made clear by our Supreme Court, "the ability of the plaintiff to represent the class must be considered," and in making that determination, the experience of plaintiff's counsel and "whether plaintiffs' interests are antagonistic to those of the class" are "important aspects of adequate representation." *Stevens v. Thomas*, 257 Ga. 645, 649 (2) (361 SE2d 800) (1987).

The Eleventh Circuit has explained that the adequacy requirement is intended to protect the legal rights of absent class members.[7]

> Because all members of the class are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class.

(Citation omitted.) *London v. Wal-Mart Stores, Inc.*, 340 F3d 1246, 1253 (IV) (C) (11th Cir. 2003). Thus, where a plaintiff's "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case," the plaintiff is

---

[7] As this Court has previously noted, "it is appropriate that we look to federal cases interpreting Rule 23 of the Federal Rules of Civil Procedure, the rule upon which OCGA § 9-11-23 was based, for guidance." (Citation and punctuation omitted.) *Brenntag Mid South*, 308 Ga. App. at 903 (2).

8

inadequate. *London*, 340 F3d at 1254 (IV) (C). See also *Kirkpatrick v. J.C. Bradford & Co.*, 827 F2d 718, 727 (11th Cir. 1987) (trial court may properly deny class certification "where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys").

Here, we find that the trial court did not abuse its discretion in determining that Lewis was not an adequate class representative because she lacks virtually any knowledge of the substance of the claims or the nature of the relief she seeks and has yielded control entirely to her counsel. These findings are more than supported by Lewis's own testimony at deposition. When asked about the Georgia complaint, Lewis testified:

> Q. Okay. Are you aware that there – before today, are you – were you aware that there was a lawsuit concerning the Knology merger that had been filed in State Court in Georgia?
>
> A. No.
>
> Q. Are you aware that you are a named party to a lawsuit involving Knology that's been filed in State Court in Georgia?
>
> A. I was not.

It was established that Lewis did not know which law firms were representing her.[8] She had not heard of co-lead plaintiff's counsel or of liaison counsel and was not familiar with the actual name of the law firm she retained. She did nothing to research potential counsel before agreeing to be represented by the law firm of Levi & Korsinsky. She retained that firm after responding to an on-line solicitation. She had never met any of her attorneys prior to her deposition. And although she knew that her law firm might be entitled to a fee for representing her, she had no idea what the

---

[8] With respect to Georgia counsel, Lewis testified:

Q. Does the name David Bain mean anything to you?

A. No.

Q. Is the Law Offices – is David Bain a name you've ever heard before?

A. No.

Q. And is the same true of the Law Offices of David Bain?

A. Yes, it's true.

fee would be and had apparently done nothing to negotiate the fee for the putative class members.

In addition, Lewis was not aware that her Delaware lawsuit had been dismissed. It was not until her deposition that she learned a lawsuit had been filed in her name in Georgia. She knew virtually nothing about the merger that is the subject of this lawsuit. Lewis was unable to explain in what ways the proxy statement was misleading, and conceded that, having never read it, she was not in a position to know whether it misrepresented or omitted any material information. And, as previously noted, she did not appear at the hearing on class certification to provide any additional evidence as to her adequacy to represent the class.[9]

Accordingly, the trial court did not err in finding Lewis inadequate on these grounds.[10] See *Wein v. Master Collectors*, No. 1:94-CV-2694, 1995 U.S. Dist. LEXIS

---

[9] Thus, the dissent's characterization that Lewis's deposition testimony showed "she adequately understood the lawsuit and that she had actively participated in the case" is unsound.

[10] The trial court also found the existence of a conflict between Lewis and the majority of the shareholders who voted to approve the merger because Lewis's complaint seeks rescission of the merger, noting that a claim for rescission is different and even antagonistic to the majority's interests. The order noted that although Lewis's counsel stated at the certification hearing that they would be withdrawing the demand for rescission, this belated attempt to alter the remedy in order to avoid losing class certification is itself evidence of a conflict between Lewis and the putative class,

11

21622, at *12 (N.D. Ga. Aug. 16, 1995) ("she has not fulfilled the role of class representative, in that she does not understand even her own claim, much less that of the putative class as a whole, and she has abandoned the prosecution of this claim entirely to her attorneys"). See also *In re Kosmos Energy Ltd. Securities Litigation*, 299 FRD 133, 145 (N.D. Tex. 2014) ("Failing to appear at the class certification hearing has also been considered a negative factor in adequacy assessment.").

2. Although Lewis's failure to meet the adequacy requirement is itself sufficient to defeat class certification, we also uphold the trial court's determination that Lewis did not meet the typicality requirement. OCGA § 9-11-23 (a) (3) requires that the claims of the representative parties be typical of the claims of the class. Specifically, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23 (a) (3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." (Citations and punctuation omitted.) *Cooper v. Southern Co.*, 390 F3d 695, 735 (11th Cir. 2004), overruled on

---

citing, inter alia, *Guttmann v. Braemer*, 51 FRD 537, 539-40 (S.D.N.Y. 1970). Because the trial court's order otherwise establishes that Lewis failed to prove her adequacy as a class representative, we do not separately address this additional ground.

other grounds, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (126 SCt 1195, 163 LE2d 1053) (2006). Thus, to establish typicality, Lewis is required to prove that she has "the same interest" and "suffer[ed] the same injury as the class members." *Vega v. T-Mobile USA, Inc.*, 564 F3d 1256, 1275 (C) (11th Cir. 2009); *MCG Health, Inc. v. Perry*, 326 Ga. App. 833, 834 (755 SE2d 341) (2014) (moving party has the burden of establishing her right to class certification in the trial court).

Here, ample evidence supports the trial court's determination that Lewis's claims were atypical.[11] Despite her claim that Knology breached its fiduciary duty in failing to disclose all material facts in the proxy statement, it is undisputed that because Lewis was not listed as a shareholder of record, she received no notices, proxy statement, or ballot and therefore did not vote on the merger, as compared to the 31,291,445 shares that were voted.[12] Moreover, at her deposition Lewis testified

---

[11] "The requirements of typicality and adequacy are closely related, for demanding typicality on the part of the representative helps ensure his adequacy as a representative." (Citation and punctuation omitted.) *Georgia-Pacific Consumer Products, LP v. Ratner*, 295 Ga. 524, 527 (1) n.9 (762 SE2d 419) (2014).

[12] The dissent claims that "[i]t seems obvious that the vote would have come out very differently if the proxy notice had indicated that – as Lewis contends – for no valid reason the defendants had expedited the sale to a lower bidder when there was another bidder who had previously offered a higher price per share, but needed only two more weeks to submit its final bid." The dissent is incorrect. The proxy statement disclosed that "Bidder C" had offered a higher price per share than WOW,

13

that she does not know how she would have voted had she been afforded the opportunity at the time.

In addition, as Lewis herself described her claims at deposition, she based her complaints on the fact that she did not receive notice of the merger or payment for her shares. The trial court then noted that, following her deposition, Lewis received payment for her converted shares, and because she elected not to attend the hearing and submitted no affidavit, the record is unclear as to what, if anything, Lewis still hopes to obtain through this litigation and thus whether her claims are typical of other shareholders.[13]

Class certification has been denied in similar circumstances. For example, in *TBK Partners v. Chomeau*, 104 FRD 127, 131 (E.D. Mo. 1985), the court denied class certification on the plaintiff's securities claims because the percentage of shareholders who voted for the merger suggested that plaintiff's claims were not

and described the course of the negotiations with Bidder C, including Bidder C's request for additional time to assemble sufficient equity financing. With this information, as well as the disclosure of the class actions filed by Equity Trading and Lewis, the overwhelming majority of the shareholders voted in favor of the merger.

[13] Contrary to Lewis's argument, the trial court did not require her to prove that all of the nonvoting shareholders shared her views. Rather, the trial court observed that there is a lack of evidence that *any* other shareholder shares her views or was in a similar position to Lewis.

shared by a majority of the proposed class members, particularly where the plaintiff did not submit sufficient evidence to the contrary. See also *Rite Aid of Ga., Inc. v. Peacock*, 315 Ga. App. 573, 578 (1) (b) (726 SE2d 577) (2012) ("Given [the class representative]'s failure to prove that his response to the [sale] was shared by other members of the class," it is difficult for him to show that he is a "typical" class representative); *MAZ Partners LP v. Shear*, No. 11-11049, 2016 U.S. Dist. LEXIS 4831, at 18* (D. Mass. Jan. 14, 2016) (court must consider evidence that overwhelming supermajority of shareholders voted for merger).

> Moreover, this Court has acknowledged that it is sometimes

> necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of OCGA § 9-11-23 (a) have been satisfied. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.

(Citation and punctuation omitted.) *MCG Health, Inc.*, 326 Ga. App. at 836. Because Lewis, well after filing her complaint for damages and rescission, presented her preferred shares for conversion and accepted payment, there may be a question as to

15

whether Lewis ultimately acquiesced to the merger. See also *Peacock*, 315 Ga. App. at 577 (a) (ii) (where plaintiff protested the sale of his pharmacy records to a new pharmacy but nonetheless demanded that the new pharmacy fill his prescription, he raised the substantial possibility that defendant may defeat the action by asserting he waived or ratified the sale at issue); *MAZ Partners LP*, 2016 U.S. Dist. LEXIS 4831, at 18-21\* (analyzing defendants' defense of acquiescence against various class members). Based on the record before us, we cannot say that the trial court abused its discretion in finding that Lewis's claims, which arose in an atypical fashion, are atypical of the proposed class.

In sum, the trial court conducted the rigorous analysis required in concluding that Lewis failed to meet her burden of proof with respect to typicality and adequacy under OCGA § 9-11-23 (a). And because the trial court's analysis is supported by ample evidence in the record, we find no abuse of discretion in the denial of class certification.

*Judgment affirmed. Dillard, P. J., Branch, Mercier and Bethel, JJ., concur. McFadden, P. J., and Reese, J., dissent. Miller, P. J., and Ellington, P. J., concur in judgment only of the dissent.*

16

A16A1915. LEWIS v. KNOLOGY, INC. et al.

McFADDEN, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. Because the trial court made clearly erroneous findings of fact and abused its discretion in denying the motion for class certification, the trial court's order should be reversed.

On September 21, 2012, Shelia Lewis and Equity Trading filed a proposed class action against Knology, Inc., and its former directors, claiming that they had breached their fiduciary duties to shareholders in obtaining an inadequate per share price upon a merger with another company. On December 23, 2013, Lewis and Equity Trading filed a motion for class certification pursuant to OCGA § 9-11-23. Under a consent order entered on April 14, 2015, Equity Trading was allowed to withdraw from the action, leaving Lewis as the sole plaintiff. On September 23, 2015, a hearing was held on Lewis's motion for class certification. On December 3, 2015, the trial court entered an order denying the motion. Lewis brought this appeal from that order.

As our Supreme Court has explained, a class action is permitted only in limited circumstances and is a matter within the trial court's discretion.

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, and consistent with its exceptional nature, a class action is permitted only in the limited circumstances described in OCGA § 9-11-23. The party seeking to represent a class bears the burden of proving that class

certification is appropriate. . . . [T]o permit the certification of a class of plaintiffs, the named plaintiffs [must] satisfy each of the four requirements described in OCGA § 9-11-23 (a) – numerosity, commonality, typicality, and adequacy of representation – as well as [one of the] requirement[s] of OCGA § 9-11-23 (b). . . . Whether to certify a class is a matter committed to the discretion of the trial court, but any exercise of that discretion must comport with the statutory requirements. Moreover, the certification of a class is appropriate only to the extent that the trial court is satisfied, after a rigorous analysis, that the statutory requirements have been satisfied. As a part of this rigorous analysis, sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. Indeed, as the United States Supreme Court has explained: Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.

*Georgia-Pacific Consumer Prods. v. Ratner*, 295 Ga. 524, 525-527 (1) (762 SE2d 419) (2014) (citations, punctuation, and footnotes omitted).

In reviewing a trial court's order on a motion for class certification, this court will affirm "the factual findings [of] the trial court . . . unless clearly erroneous, and we will review the conclusions of law for an abuse of discretion. Additionally, it is appropriate that we look to federal cases interpreting Rule 23 of the Federal Rules of Procedure, the rule upon which OCGA § 9-11-23 was based, for guidance[.]" *American Debt Foundation v. Hodzic*, 312 Ga. App. 806, 808 (720 SE2d 283) (2011). Here, the trial court's order concluded that Lewis had failed to satisfy the adequacy

2

and typicality requirements of OCGA §§ 9-11-23 (a) and the predominance and superiority grounds of OCGA § 9-11-23 (b).

The majority upholds the trial court's adequacy and typicality findings, but does not address the lower court's predominance and superiority findings. Because the trial court made clearly erroneous findings of fact and abused its discretion in making such findings, the denial of class certification should be reversed.

1. *Adequacy.*

Division 1 of the majority opinion upholds the trial court's finding that Lewis is not an adequate class representative "because she lacks virtually any knowledge of the substance of the claims or the nature of the relief she seeks and has yielded control entirely to her counsel." However, the factual finding that Lewis lacks virtually any knowledge of her claims or the relief sought is clearly erroneous and the trial court abused its discretion in denying class certification on the purported basis that she has yielded control of the litigation to her counsel.

OCGA § 9-11-23 (a) (4) provides that one or more members of a class may sue or be sued as representative parties of the class if "[t]he representative parties will fairly and adequately protect the interests of the class." In considering this factor, "[t]he important aspects of adequate representation are whether the plaintiffs' counsel

3

is experienced and competent and whether plaintiffs' interests are antagonistic to those of the class." *Jones v. Douglas*, 262 Ga. 317, 323 (2) (418 SE2d 19) (1992) (citation, punctuation, and emphasis omitted).

Here, Lewis presented unrefuted evidence demonstrating her counsel's experience and competence in class action litigation involving mergers and acquisitions. The trial court's only pertinent finding as to the experience and competence of Lewis's counsel was that the court did "*not question the ability of lead and liaison counsel.*" (Emphasis supplied.) Thus, the trial court actually found that Lewis had satisfied what is perhaps the most important adequacy factor in that she has retained experienced and competent counsel to help her adequately protect the class interests.

Although Lewis met this important adequacy factor, the trial court found that Lewis was inadequate because she has given "control of the claims entirely to counsel," she "lack[ed] virtually any knowledge of the substance of the claims or the nature of the relief" sought, and there were conflicts between her and the majority of shareholders who voted for the merger. With regard to the purported conflicts, the mere fact that some shareholders voted to approve the merger does not create a

conflict with Lewis's central claims that the defendants breached fiduciary duties and that all the shareholders received inadequate compensation.

As for the trial court's findings that Lewis had ceded control entirely to counsel and that she had virtually no knowledge of her own claims, the trial court cited no specific evidence in support of these findings. While the majority attempts to support the trial court's unsupported findings by citing parts of Lewis's deposition indicating that she did not know that her attorneys had made the procedural decision to dismiss the case in Delaware and re-file it in Georgia, did not know exactly recall the name of her counsel's law firm, and did not know the fee that they might earn. However, all of those matters have no bearing on the real issues pertaining to the question of adequacy. First, contrary to the majority and trial court's reliance on irrelevant facts, it is apparent from a reading of Lewis's entire deposition testimony that she adequately understood the lawsuit and that she has actively participated in the case. Lewis testified that she had regular communication on the phone and through email with her attorneys, that she had reviewed documents from counsel which had information about Knology and the merger, that she knew Knology was merging with a buyer who would pay only $19.75 per share, that she knew other bidders had wanted to purchase Knology for a higher price, and that she believed company

5

insiders were unfairly benefitting from the merger while shareholders were receiving an inadequate payment. She further deposed that as class representative her duty was to fairly protect the interests of the class, and that she would go to any depositions or to court as needed. Contrary to the majority's reasoning, it is not proof of inadequate representation that Lewis has not immersed herself in the details of this litigation, or even that she is unfamiliar with possible legal developments that loom large to the professionals working on it. It is enough that she is in communication with her legal team; she is not required to be familiar with every member of it. Nor is it proof of inadequacy that she personally cannot effectively articulate the nuanced merits of her case. That is what lawyers are for. Indeed, that is why, rather than focusing on the named plaintiff's intimate knowledge of the details of this complex litigation, "[t]he focus of adequacy of representation is on class counsel." *Georgia-Pacific Consumer Prods. v. Ratner*, 323 Ga. App. 203, 209 (1) (d) (746 SE2d 829) (2013), reversed on other grounds, *Georgia-Pacific Consumer Prods.*, supra, 295 Ga. 524.

> Adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that they will individually pursue with vigor the legal claims of the class. . . . The fact that [Lewis is] allowing [her] counsel to prosecute the case demonstrates the exercise of good judgment and not abdication of [her] obligations as class representative[]. [Lewis has] met [her] burden under [OCGA § 9-

6

11-23 (a) (4)] of showing that [she] will fairly and adequately protect the interests of the class.

*In re Miller Indus. Sec. Litig.*, 186 F. R. D. 680, 687-688 (B) (4) (N. D. Ga. 1999).

Under these circumstances, the trial court abused its discretion in finding that Lewis was not an adequate class representative.

2. *Typicality.*

OCGA § 9-11-23 (a) (3) provides that one or more members of a class may sue or be sued as representative parties on behalf of the class if "[t]he claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"

> The typicality requirement under OCGA § 9-11-23 (a) is satisfied upon a showing that the defendant committed the same unlawful acts in the same method against an entire class. Thus, typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory.

*Brenntag Mid South v. Smart*, 308 Ga. App. 899, 904-905 (2) (a) (iii) (710 SE2d 569) (2011) (citations and punctuation omitted).

In this case, a sufficient nexus exists between Lewis's claims and those of the class at large. As set forth in her complaint, Lewis alleges that the defendants breached their fiduciary duties to her and other former Knology shareholders in

7

connection with their agreement to sell Knology to a private equity fund for inadequate consideration of $19.75 per share. The asserted claims of both Lewis and the putative class clearly arise from the same alleged events concerning the sale of Knology and are based on the same legal theory of breach of fiduciary duty. Accordingly, the typicality requirement of OCGA § 9-11-23 (a)(3) has been satisfied.

In holding otherwise, the majority and the trial court noted that Lewis had not received or read the proxy statement issued prior to the sale of the company, that she had not voted on the proposed sale, and that after filing suit she obtained payment for her former Knology stock in accordance with the merger agreement. Based on these circumstances, the majority upholds the trial court's findings that "the record is unclear as to what, if anything, Ms. Lewis still hopes to attain in the lawsuit" and that "there was no evidence adduced that would explain what, if any, claim[s] she continues, individually, to have, and thus no basis to conclude whether or not they are typical of those of other shareholders." These factual findings are clearly erroneous as it is apparent from Lewis's complaint, her motion for class certification, and her deposition testimony that she is seeking monetary damages for the allegedly inadequate payment of $19.75 per share. Such claims for Lewis and other members of the class still exist, regardless of whether or not she had read the proxy statement

8

or voted on the merger. Those distinctions would make a difference only if they represented credible defenses against Lewis's claims, but they do not. Thus, the majority's decision is premised on clearly erroneous factual findings by the trial court on matters that are immaterial to her claims.

The trial court also found that Lewis had not shown typicality because "record evidence demonstrates that many class members do not share Plaintiff's position." The trial court did not indicate what evidence it was relying on for such a finding, but it appears that it may have been referring to the fact that a majority of the outstanding shares had voted in favor of the proposed sale of the company. But contrary to the trial court's finding, a vote in favor of the merger does not necessarily mean that those class members would reject Lewis's position that the $19.75 per share payment was inadequate. It seems obvious that the vote would have come out very differently if the proxy notice had announced that — as Lewis contends — for no valid reason the defendants had expedited the sale to a lower bidder when there was another bidder who had previously offered a higher price per share, but needed only two more weeks to submit its final bid.

It is not a valid criticism of Lewis's evidence that she failed to prove that other shareholders agree with her that it would have been better to sell higher. The

majority's position making such a criticism is not supported by the Georgia case it cites, *Rite Aid of Ga. v. Peacock,* 315 Ga. App. 573, 578 (1) (b) (726 SE2d 577) (2012). In that case, we found no typicality, noting that the putative class representative had failed to prove that his objection to the closing of a specific pharmacy was shared by other members of the class. Id. But the instant case is materially different in that it involves shares of stock that were allegedly sold for an inadequate price.

Moreover, the trial court's finding ignores Lewis's fundamental allegation that the proxy statement did not disclose material information needed for shareholders to cast an informed vote. Thus, the fact that a majority of shareholders may have cast uninformed votes does not render Lewis's claims atypical.

> That an investor voted in favor of the merger does not preclude that investor from having a claim against [d]efendants. Even the unnamed class members that voted for the merger have suffered from a similar [alleged] injury as [Lewis], as they . . . were reimbursed using the same valuation as [Lewis]. Moreover, that an investor voted for the merger is not strong evidence that the investor does not share [Lewis's] complaints about the merger[]. The thrust of [Lewis's] case is that investors were misled about the desirability of the merger. And even if a class member would have voted for the merger even if fully informed of the information that [Lewis] argues should have been included in the proxy statements, that class member would still share [Lewis's] interest in any compensatory relief that would result if the lawsuit succeeds.

10

Based on the allegations and evidence before [us, we] find[] that the claims of [Lewis] are typical of those of the class.

*Schulein v. Petroleum Dev. Corp.*, 2014 U.S. Dist. LEXIS 4154 *10-11 (2.3) (C.D. Cal. 2014). See also *Liberty Lending Servs. v. Canada*, 293 Ga. App. 731, 738 (1) (b) (668 SE2d 3) (2008) (typicality requirement met where plaintiff's claims and those of class were one and the same).

3. *Predominance and superiority.*

The majority does not reach the trial court's predominance and superiority findings. But like the typicality and adequacy findings, the trial court abused its discretion in finding that Lewis had not met these factors for class certification.

OCGA § 9-11-23 (b) (3) provides that a class action may be maintained if "[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Here, the trial court found that Lewis had not shown predominance because there may be individual questions involving acquiescence and ratification, and causation that arise in the litigation. However, "as long as the common questions predominate, a class may be certified even if some individual

11

questions of law or fact exist." *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688, 691 (1) (649 SE2d 862) (2007) (citation omitted). As discussed above, the questions pertaining to the defendants' liability for the alleged breaches of fiduciary duties and the payment of inadequate per share price upon the merger are common to all the members of the class and predominate over any possible individual questions. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Liberty Lending Svcs. v. Canada*, supra, 293 Ga. App. at 739 (2) (citation omitted). Accordingly, the trial court abused its discretion in concluding that Lewis had not shown predominance.

As for the issue of superiority:

> The cost . . . to conduct discovery, and to present the case for trial for an individual party [that owned stock] in the class . . . would be essentially the same as preparing and presenting the case for all class members. The cost of preparation of an individual claim could well exceed the potential recovery of actual damages. The efficiencies of preparation and presentation on a class-wide basis outweigh any interest of class members proceeding on an individual basis. Moreover, anyone who wishes to opt out will be given the opportunity to opt out of this class action. There [apparently] is no other competing litigation of the claims presented in this action. . . . A class action would clearly be more manageable than [multiple] separate lawsuits or mass joinder of [multiple] named plaintiffs in a single action.

*Georgia-Pacific Consumer Prods.*, supra, 323 Ga. App. at 212 (2) (b).

For the foregoing reasons, the trial court committed clear error and abused its discretion in denying Lewis's motion for class certification. Accordingly, unlike the majority, I believe this court should reverse that erroneous trial court order.

I am authorized to state that Judge Reese joins in this dissent, and that Presiding Judge Miller and Presiding Judge Ellington concur in judgment only as to this dissent.